UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Luis Santiago,             :
    Plaintiff,             :
                           :
v.                         :      Case No. 3:05cv405 (JBA)
                           :
Owens-Illinois, Inc., et al., :
    Defendants.            :

**RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**
**[DOC. ## 97, 102]**

Plaintiff Luis Santiago brought this action (initially filed in state court and removed to federal court on diversity jurisdiction grounds) against his former employer Owens-Illinois, Inc. ("OI"),[1] and the companies that bought the OI plant in Bridgeport, Connecticut where he worked for over 35 years, Continental AFA Dispensing Company and Continental Dispensing Company d/b/a Continental Sprayer International, Inc. (collectively, "Continental"), alleging discrimination on the basis of age and race in violation of Conn. Gen. Stat. § 46a-60 (Count 1), negligent misrepresentation (Count 2), and breach of contract (Count 3).  Am. Compl [Doc. # 84].

Defendants now move for summary judgment, contending that plaintiff's claims must fail for untimely filing with the

---

[1] Defendants observe that while plaintiff named "Owens-Illinois, Inc." as a defendant in this case, plaintiff's former employer, and the company that actually owned the business at the time it was sold, is "Owens-Illinois Closure Inc."  For ease of reference, the Court refers to all Owens-Illinois entities involved, collectively, as Owens-Illinois, or "OI."

1

Connecticut Commission on Human Rights and Opportunities ("CHRO"), failure to exhaust administrative remedies, lack of any genuine issue of material fact as to whether defendants acted under circumstances giving rise to an inference of discrimination, absence of evidence that the alleged negligent misrepresentations were known to be false when made, and absence of a sufficiently definite or specific promise to support a breach of contract claim. Continental Mot. [Doc. # 97]; OI Mot. [Doc. # 102]. For the reasons that follow, defendants' Motions will be denied as to the discrimination claim and granted as to the negligent misrepresentation and breach of contract claims.

## I.  Factual Background

While relevant disputes of fact will be discussed in more detail infra Pt. III, the record reveals the following general background. Plaintiff is a Hispanic male born on May 10, 1948, who was 55 years old at the time his employment by OI ceased and was not continued by Continental. He had been employed at the Bridgeport, Connecticut manufacturing facility (the "Plant") owned by OI and subsequently purchased by Continental for 37 years, starting with evening employment during high school, and was the Plant's most senior salaried employee. At the time his employment at the Plant ceased, plaintiff was the Plant's only production manager (the other production manager having recently retired and not having been replaced). He was responsible for

the assembly area of the facility and reported to the Plant Manager, Bradford Smythe. Defendants do not dispute that over the course of his tenure at the Plant, plaintiff performed his work satisfactorily, received positive performance reviews, received periodic increases in responsibilities and salary, and was qualified to perform the functions of the salaried production positions which he supervised.

In the fall of 2003, OI sold the Plant to Continental pursuant to an Asset Purchase Agreement that closed on November 12, 2003, effective 11:59 p.m. EST on October 31, 2003. OI contends that as of that date it severed its employment relationship with each of its employees working at the Plant, although Continental (re)hired most of those employees. However, Continental did not hire plaintiff. Continental contends that just before purchasing the Plant it learned that the Plant's largest customer, Neutrogena, would be purchasing its plastic finger pumps from another manufacturer, and thus Continental made restructuring decisions, including eliminating plaintiff's position as well as the Injection Molding Production Manager position which was at the time unfilled and having Mr. Smythe carry out the responsibilities of these positions in an effort to streamline the management structure. Plaintiff contends that the decision to eliminate his position and the failure to offer him available lower-level positions which had been held by less

3

senior people prior to the sale was motivated by age and race bias, and contends that the claimed need to eliminate his position and him because of the Neutrogena announcement is pretextual, inter alia, because the Plant continued (and continues) to manufacture products for Neutrogena after the announcement was made and retained all three assembly production shifts until 2006.

## II. Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002). The duty of the court is to determine whether there are issues to be tried and, in making that determination, the Court must draw all factual inferences in favor of the party opposing the motion, viewing the factual disputes among materials such as affidavits, exhibits, and depositions in the light most favorable to that party. Phaneuf v. Fraikin, 448 F.3d 591, 595 (2d Cir. 2006). "If reasonable minds could differ as to the import of the

evidence . . . and if there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal quotation, citation, and alteration omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (internal quotation and citation omitted).

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if he or she can point to an absence of evidence to support an essential element of the non-moving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex, 477 U.S. at 324); see also Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir.

1994) ("[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case."). The non-moving party, in order to defeat summary judgment, must then come forward with evidence that would be sufficient to support a jury verdict in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."). In making this determination, the Court draws all reasonable inferences in the light most favorable to the party opposing the motion. Matsushita, 475 U.S. at 587. However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading," Fed. R. Civ. P. 56(e), and "some metaphysical doubt as to the material facts" is insufficient. Id. at 586 (citations omitted).

### III. Discussion

#### A. Discrimination

##### i. Procedural Bars

Preliminarily, defendants contend that plaintiff untimely filed his CHRO charge more than 180 days after he received notice that he would not be hired by Continental and his employment would cease. OI additionally argues that plaintiff failed to obtain a release of jurisdiction from the CHRO prior to filing this lawsuit.

6

With respect to the first contention, there appears to be a genuine dispute as to when plaintiff first received notice that he would not be hired by Continental and whether that date was more or less than 180 days from when he filed his CHRO charge.[2] While defendants refer to plaintiff's deposition testimony that he received 30 days' notice and that his termination date was November 30, 2003, see Santiago Dep. at 21, 72, 75, reasoning that thus he must have had notice of his termination by at least October 31, 2003, they do not directly address plaintiff's argument that this notice period to which he referred was given to all Plant employees from the date they were told they would be technically "terminated" from OI upon sale of the Plant, but that plaintiff was not given notice that he would not be rehired by Continental and that his employment at the Plant would therefore permanently cease until December 1, 2003, see Santiago Aff. ¶ 25.[3] Defendants contend that plaintiff's affidavit is

---

[2] As all parties agree, the 180-day statute of limitations period for filing a CHRO charge runs not from the effective date of the adverse action complained of but from the date on which the plaintiff received notice of that action. See, e.g., Miller v. Int'l Telephone & Telegraph Corp., 755 F.2d 20, 23 (2d Cir. 1985) (citing cases).

[3] The earlier announcement that plaintiff, along with all other Plant employees, would be "terminated" or "laid off" from OI does not constitute the notice triggering the 180-day period for the filing of plaintiff's CHRO charge, as it is not disputed that at least some representations were made to plaintiff and his colleagues that their jobs were secure and that they would be rehired by Continental when it took over the Plant. See, e.g., Smythe Dep. at 55-56.

7

contradicted by his deposition testimony in which he stated he could not remember the exact date on which he was informed that he would not be employed by Continental, see Santiago Dep. at 72-73, but the Court does not view plaintiff's inability to remember the exact date in his deposition as contradictory, particularly where he did say at deposition that "[i]t was the date that was on the layoff," id. at 72, which could be interpreted to mean the date he was terminated from OI, i.e., November 30, 2003. Thus, there is dispute as to whether plaintiff received notice that Continental would not hire him only as of November 30 or December 1, 2003, both being within 180 days of May 26, 2003, the day on which defendants contend plaintiff filed his charge.[4]

With respect to the release issue, the CHRO did issue a release of jurisdiction on November 4, 2004 (before plaintiff commenced suit), see 11/4/04 Release [Doc. # 119, Ex. R], and OI cites no authority for the proposition that this release was invalidated by plaintiff's subsequently filed reconsideration request, which was ultimately denied, see 3/1/05 Recon. Denial [Doc. # 119, Ex. S].

ii. Standard

Turning thus to the substance of defendants' Motions, as the parties agree plaintiff's discrimination claim is analyzed under

---

[4] Plaintiff contends that he filed his charge on May 21, 2003, but the Court need not resolve this dispute here.

the McDonnell-Douglas/Burdine burden-shifting framework. See Ruscoe v. Housing Auth. of City of New Britain, 259 F. Supp. 2d 160, 166 (D. Conn. 2003) (citing Levy v. Comm'n on Human Rights & Opportunities, 671 A.2d 349, 355-56 & n.15 (Conn. 1996)). To make out a prima facie case, plaintiff must show: (1) membership in a protected class; (2) qualification for his position; (3) an adverse employment action; and (4) circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class. See, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).[5]

If plaintiff is able to establish his prima facie case, the burden shifts to defendant "to produce evidence that the plaintiff was [terminated] for a legitimate, nondiscriminatory reason. This burden is one of production, not persuasion; it can involve no credibility assessment." Reeves v. Sanderson Plumbing, 530 U.S. 133, 142 (2000) (internal citations, quotations omitted). It is satisfied if the proffered evidence

---

[5] While Continental contends that this standard is inapplicable here as this is a "failure to hire" situation, the failure to hire schema urged by Continental (i.e., including requiring plaintiff to show that he applied for a position for which the employer was seeking applicants and that after plaintiff's rejection the position remained open and the employer continued to seek applicants) is misplaced in the circumstances of this case, given that plaintiff had a position at the Plant prior to the sale, all but two salaried employees were retained after the sale, and plaintiff's prior position was eliminated.

9

"'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" Schnabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000) (quoting St. Mary's Honor Ctr., 509 U.S. at 509). "Although the burden of production shifts to the defendant, the ultimate burden of persuading the trier of fact of intentional discrimination remains at all times with the plaintiff." Scaria v. Rubin, 117 F.3d 652, 654 (2d Cir. 1997).

If defendant articulates an age-neutral basis for its termination of plaintiff, "'the McDonnell Douglas framework – with its presumptions and burdens' – disappear[s] . . . and the sole remaining issue [is] discrimination vel non." Reeves, 530 U.S. at 142-43 (citing St. Mary's Honor Ctr, 509 U.S. at 510). The burden thus shifts back to plaintiff to "come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). That is, the plaintiff "may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence." Reeves, 530 U.S. at 143. The Second Circuit has noted that upon a motion for summary judgment in a discrimination case, courts must "examin[e] the entire record to determine whether plaintiff could satisfy his ultimate burden of persuading the trier of fact that the

defendant intentionally discriminated against the plaintiff." Schnabel, 232 F.3d at 90. Thus, a plaintiff's prima facie case combined with sufficient evidence that the defendant's proffered justification is pretextual may be sufficient to survive summary judgment, although the Second Circuit has "decline[d] to hold that no . . . defendant may succeed on a summary judgment motion so long as the plaintiff has established a prima facie case and presented evidence of pretext." Id. (citing Reeves, supra).

   iii. Analysis

Here, the first three elements of the prima facie case are not in dispute and there is sufficient evidence in the record to support a conclusion in favor of plaintiff on the fourth, i.e., that the adverse action (his termination from OI/non-rehire by Continental) was motivated by age and/or race, as follows. At the time he ceased working at the Plant, plaintiff was the only minority management employee and, additionally, was the employee with the most seniority. Only two salaried employees were discharged and not rehired by Continental, plaintiff and Felicia Bohannon, and both were minorities over the age of 55. Additionally, the Section 8.1 table in the evolving drafts of the Asset Purchase Agreement listing the age and years of service of each of the Plant's employees, and Smythe's deposition testimony (although grossly mischaracterized by plaintiff) stating that he "believe[s] it to be the case that anyone who [wa]s 55 or older

11

who was employed by Owens-Illinois at the time of the sale had to take retirement," Smythe Dep. at 81, could support an inference that age was on the minds of the defendants when they decided that plaintiff would not continue working at the Plant after the sale.  Further, while OI disputes whether it rises to the level of a "practice" or "policy," it is undisputed that at least on occasion in the past, OI had conducted non-union layoffs on a seniority basis by laying off less senior employees and giving more senior employees the opportunity to take those lower-level positions rather than be laid off.  See Adante Dep. at 93-98 (there was a "practice," though no written policy, that seniority was considered in layoffs, and there were occasions where a less senior employee "was laid off because [a more senior employee] was moved into it," although they "didn't call it bumping").  Thus, even if there was no obligation or guarantee that OI would follow this practice, and notwithstanding that Continental may not have had such a practice, it would be reasonable to infer that Smythe, knowing this workplace, being asked to make recommendations and decisions regarding restructuring, and being concerned about workplace morale, would take this precedent into account.[6]  Taken together, this evidence shows circumstances that

---

[6] While defendants contend that even if OI had such a practice/precedent of layoffs by seniority there was no practice of "bumping" less senior employees so that more senior employees could fill their positions, suggesting that Continental would have had to "bump" less senior employees from their production

could support an inference of age and/or race discrimination.

Additionally, there is evidence to support an inference that defendants' articulated reasons for the decision that plaintiff would not continue his employment at the Plant are pretextual. Specifically, while Continental points to Neutrogena's October 30, 2003 announcement that it would cease sending its manufacturing business to the Plant, the Plant's assembly jobs were apparently not immediately affected by this announcement, the Plant maintained three assembly shifts through 2006, and the Plant does not appear from the record to have ever completely lost Neutrogena's business. Defendants' economic rationale for discharging/not rehiring plaintiff also could be seen as pretextual because the rationale for eliminating plaintiff's position and the empty injection molding production manager position – to save $200,000 – does not address plaintiff's contention that he should have been offered an available lower-level position when the OI-to-Continental transition took place such that the savings would still have been achieved as to his former position. Smythe's explanation that plaintiff was not offered another position because "it would have required him to

---

positions to make way for plaintiff, defendants ignore their own characterization of events: that OI discharged all its employees, and thus until Continental rehired those employees all continuing Plant positions were open. Therefore plaintiff, being undisputably qualified for available lower-level positions, could have filled one of them, with the result being that a less senior employee would not have been rehired, but would not be "bumped."

13

take a significant pay cut . . . and because of impact on morale of the organization," Smythe Aff. ¶ 28, is also insufficient for summary judgment purposes because it does not explain why plaintiff was not at least offered such a position and given the option of taking it, particularly in light of the Plant's precedent described above of allowing senior employees to take less senior positions in lieu of layoff.[7]

Taken together, this evidence, combined with the evidence supporting plaintiff's prima facie case, could support a reasonable inference that the reasons proffered by defendants for the adverse action taken against plaintiff are pretextual and

---

[7] Defendants also offer contradictory explanations of who made the decision that plaintiff would cease working at the Plant, with each disclaiming responsibility. For example, in its CHRO response, OI stated that it "sold its entire business to Continental AFA on or about November 13, 2003 and as a result, terminated its employment relationship with all of its employees, including [plaintiff]. . . . [OI] had and has, no way of controlling how the new organization was or is, configured. The new owner (Continental AFA) apparently determined that the positions of both Production Managers (Injection Molding and Assembly) were not needed in the new organization. . . ." OI CHRO Resp. [Doc. # 119, Ex. F] ¶ 12; see also OI Sched. A. Resp. [Doc. # 119, Ex. J]. ¶ 11 ("Luis Santiago's position was abolished by the new owner. It is our understanding that he was not hired by the acquiring organization."). By contrast, Continental in its CHRO response stated "[plaintiff] was laid off by Owens as there was no position for him in the new organization." Continental CHRO Resp. [Doc. # 119, Ex. G] ¶ 15; accord Continental Sched. A Resp. [Doc. # 119, Ex. I] ¶ 11. Since one or both entities must have made the decision that plaintiff would cease working at the Plant after the sale, there is dispute between them as to who made this decision, and thus the Court cannot grant summary judgment on this basis to either defendant.

14

that the real reason was discrimination.  Accordingly, defendants' Motions on plaintiff's discrimination claim must be denied.

**B.   Negligent Misrepresentation**

The tort of negligent misrepresentation, set out in § 552 of the Restatement Second of Torts and adopted in Connecticut, provides:

> One who, in the course of business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

See Presley v. Pepperidge Farm, Inc., 356 F. Supp. 2d 109, 135 (D. Conn. 2005) (citing Restatement 2d Torts; Barry v. Posi-Seal Int'l, Inc., 647 A.2d 1031 (Conn. App. Ct. 1994)).  Plaintiff must thus prove, inter alia, that the representation was known or should have been known to be false at the time it was made.  See Yurevich v. Sikorsky Aircraft Div., 51 F. Supp. 2d 144, 152 (D. Conn. 1999) (citing Foy v. Pratt & Whitney Group, 127 F.3d 229, 233 (2d Cir. 1997)).

For his claim, plaintiff relies on alleged statements by Smythe in late September or early October 2003 concerning the stability of plaintiff's job.  See Pl. Opp. at 39 (citing Smythe Dep. at 32-34, 53, 55).  However, even assuming Smythe's statements were made as plaintiff describes and in the course of

Smythe's duties of employment at either/both defendant companies, there is no evidence supporting an inference that Smythe knew or should have known his statements were false at the time he made them. In fact, plaintiff admitted at his deposition that "there [is no] reason that [he] think[s] that what Mr. Smythe was telling [him] was something that he knew was not true at the time." Santiago Dep. at 121. Moreover, the drafts of the Asset Purchase Agreement in the record are consistent with this interpretation: while plaintiff refers to a draft of Section 8.1 of the Asset Purchase Agreement which omitted his name, see 11/6/03 Draft #4 [Doc. # 134, Ex. D to Shriver Aff.], all earlier drafts, including an October 31, 2003 draft dated after the latest date on which plaintiff claims Smythe's representations occurred, included his name, see 10/31/03 Draft #3 [Doc. # 134, Ex. C to Shriver Aff.]. Because there is no evidence in the record from which a reasonable juror could conclude that Smythe knew or should have known his representations were false at the time they were made, summary judgment as to this claim must be granted.

### C. Breach of Contract

Plaintiff also claims breach of contract arising out of Smythe's representations and the claimed policy to layoff by seniority, which he claims defendants did not follow in this instance. The elements of a breach of contract claim are: (1)

the formation of an agreement, (2) performance by one party, (3) breach of the agreement by the other party, and (4) damages. Bouchard v. Sundberg, 834 A.2d 744, 751 (Conn. App. Ct. 2003). With respect to the first element, "[a]n agreement must be definite and certain as to its terms and requirements. . . . So long as any essential matters are left open for further consideration, the contract is not complete. . . . A contract requires a clear and definite promise." Geary v. Wentworth Labs., Inc., 760 A.2d 969, 973 (Conn. App. Ct. 2000). With respect to the claimed seniority layoff policy, plaintiff must be able to establish "that adherence to these policies and procedures was the result of a contractual commitment by the defendant[s]." Gagnon v. Housatonic Valley Tourism Dist. Comm'n, 888 A.2d 104, 111 (Conn. App. Ct. 2006).

Here, there is no evidence of a clear and definite promise sufficient to support a breach of contract claim. To the contrary, when asked whether he told plaintiff and other employees that "their employment was going to be retained," Smythe responded "I don't believe I would have stated it in concrete terms . . . At the time it was a very unsettling period because we weren't exactly sure how things were going to go or if the deal was going to close, and there was a tentativeness on the part of Continental AFA . . . – and I understood that – to make any firm commitment. But [David Weaver of Continental] would

17

have said something in the context of it appears as though we're going to be keeping the current staff team together, and I would have thereafter said something in the same context to our salaried employees. . . . I would have said that things looked good." Smythe Dep. at 55-56. Plaintiff's own testimony does not establish any specific or definite promise evidencing an intent on behalf of either defendant to be contractually bound – plaintiff testified that the only promise he is relying on for his breach of contract claim is Smythe's representations, Santiago Dep. at 93, but he acknowledges that he never received anything in writing offering employment from either Continental or OI, and plaintiff describes Smythe's representation as giving him the general impression that "there was a taking over by Continental [that] meant that all [their] jobs were secure," id. at 105, and that "[their] jobs would not be affected," id. at 115, 126.

Further, as noted above, absent evidence of a contractual commitment, policies or practices cannot form the basis for a breach of contract claim.[8] Indeed, Mr. Adante, who testified regarding the purported layoff-by-seniority "practice," stated that to his knowledge no promises were made to employees that the

---

[8] While plaintiff argues that his policy-based breach of contract theory is in fact grounded on an "agreement" by OI, Pl. Opp. at 45, this argument contradicts his testimony at deposition where he stated that he was relying on "[a] practice that the company followed," not a promise, Santiago Dep. at 91-92.

practice would always be used.  Adante Dep. at 94-95.

Additionally, even if formation of a contract could be established, it would have been an at-will employment contract which Owens-Illinois was entitled to terminate at any time without cause.  See Thibodeau v. Design Group One Architects, LLC, 802 A.2d 731, 735 (Conn. 2002) ("In Connecticut, an employer and employee have an at-will employment relationship in the absence of a contract to the contrary.  Employment at will grants both parties the right to terminate the relationship for any reason, or no reason, at any time without fear of legal liability.").  Moreover, with respect to Continental, there is no evidence to suggest that Smythe was speaking or acting on behalf of Continental when he made the claimed representations to plaintiff and thus there is no evidence of any intent on behalf of Continental to be contractually bound to hire plaintiff.[9]

---

[9] In his opposition memorandum plaintiff also argues that defendants may be liable under a promissory estoppel theory, but such a claim was not advanced in his Amended Complaint and thus he is precluded from arguing it here.  Moreover, "[a] claim for promissory estoppel requires '(1) a clear and unambiguous promise; (2) a reasonable and foreseeable reliance by the party to whom the promise is made; and (3) an injury sustained by . . . reason of his [or her] reliance," Dacourt Group, Inc. v. Babcock Indus., Inc., 747 F. Supp. 157, 161 (D. Conn. 1990), and plaintiff can establish neither a clear and unambiguous promise, inasmuch as such a promise must be "sufficiently promissory [and] sufficiently definite to support contractual liability," see D'Ulisse-Cupo, 520 A.2d at 222, nor any forbearance, indeed he claims none, see also, e.g., Martin v. Dupont Flooring Sys., Inc., No. 01cv2189 (SRU), 2004 WL 726903, at *6 (D. Conn. Mar. 31, 2004) ("[F]orbearance from seeking job opportunities is not sufficient to show detrimental reliance for purposes of

19

Thus there is insufficient evidence in the summary judgment record on which a reasonable jury could base a plaintiff's verdict on the breach of contract claim, and thus this claim must also be dismissed.

**IV. Conclusion**

For the foregoing reasons, defendants' Motions for Summary Judgment [Doc. ## 97, 102] are DENIED in part as to plaintiff's discrimination claim (Count 1) and GRANTED in part as to plaintiff's negligent misrepresentation and breach of contract claims (Counts 2 and 3).

        IT IS SO ORDERED.

         /s/
        Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut this 15th day of March, 2007.**

---

promissory estoppel" because it is too speculative to establish detriment."), aff'd 125 Fed. Appx. 369 (2d Cir. 2005).